[No. D058413. Fourth Dist., Div. One. June 28, 2011.]

RUTH S. HARTLEY, Individually and as Trustee, etc., Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; MONEX DEPOSIT COMPANY et al., Real Parties in Interest.

1250

## COUNSEL

Law Office of Timothy C. Karen and Timothy C. Karen for Petitioner.

No appearance for Respondent.

Pistone & Wolder and Thomas A. Pistone for Real Parties in Interest.

## OPINION

**McCONNELL, J.**—Ruth S. Hartley seeks a writ of mandate to overturn the trial court's order compelling her to arbitrate her claims against real parties in interest. Hartley contends the court erred by finding the parties' arbitration

agreement clearly and unmistakably gives the arbitrator the exclusive authority to decide the gateway issue of unconscionability, or arbitrability. We agree, and accordingly, grant the petition and order the issuance of a writ of mandate.

## BACKGROUND

In September 2009 Hartley filed a complaint for damages against Monex Deposit Company and numerous associated companies and individuals (collectively, Monex).[1] The complaint alleges Hartley is an elderly widow. Her husband, Millard Hartley (Millard), who died in 1999, had handled all their finances. Millard had opened an account with Monex, a precious metals dealer. After Millard's death, Hartley invested with Monex, signing standard form contracts titled "Atlas Account Agreements" (hereafter account agreements), which included a "Purchase and Sale Agreement" (purchase agreement) and "Loan, Security and Storage Agreement" (loan agreement), both of which contained an arbitration clause. Hartley lost more than $400,000 by following the advice of a Monex account executive to purchase silver "on margin." The agent concealed the risks of investing in volatile precious metals on margin.

The complaint includes claims for breach of fiduciary duty, negligence, fraud, elder abuse and other statutory violations, and for injunctive relief under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). The complaint also seeks declaratory relief as to whether certain disclaimers in the account agreements, and the arbitration clauses of the agreements, are unconscionable and unenforceable.

Monex petitioned to compel arbitration. Hartley opposed, arguing Monex had the greater bargaining power, the arbitration clause is a contract of adhesion, and it is oppressive. A week after Hartley signed an account agreement that did not contain an arbitration clause, Monex required her to sign a new account agreement, which added an arbitration clause, on the guise the original agreement was outdated. The contracts looked virtually alike, and the arbitration clause in the new agreement was in "fine print type." Hartley complained that arbitration before JAMS would be prohibitively costly to her given the hourly rates charged by retired judges. Further, she argued the arbitration clause unfairly provides that a party requesting a three-member panel pay the entire cost of the panel, whereas the parties split the cost of a single arbitrator; allows an appeal only when one arbitrator is

---

[1] The defendants include Monex Credit Company, Comco Management Corporation, Metco Management Corporation, Monaco Financial, LLC, Monex International Deposit Company, Louis E. Carabini, Michael A. Carabini and Holly Mannino.

used; prohibits punitive damages, damages for statutory violations and award of attorney fees; and prohibits class actions and joinder or consolidation, and waives any customer reliance on federal or state judicial opinions denying enforcement of arbitration under such circumstances.

The court granted Monex's petition to compel. The court determined the arbitration clause requires the arbitrator, rather than the court, to determine the issue of arbitrability. The court cited the United States Supreme Court's opinion in *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. ___ [177 L.Ed.2d 403, 130 S.Ct. 2772] (*Rent-A-Center*).

## DISCUSSION

## I

### *Legal Principles*

■ A threshold dispute as to whether an arbitration agreement is unconscionable is ordinarily for the court's decision rather than the arbitrator's. In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 171 [30 Cal.Rptr.3d 76, 113 P.3d 1100], disapproved on another point in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1753], our high court explained: "[T]he question whether 'grounds exist for the revocation of the [arbitration] agreement' (Code Civ. Proc., § 1281.2) based on 'grounds as exist for the revocation of any contract' (*id.*, § 1281) is for the courts to decide, not an arbitrator. [Citation.] This includes the determination of whether arbitration agreements or portions thereof are deemed to be unconscionable or contrary to public policy."

In federal cases, the United States Supreme Court has held that although the issue of arbitrability is usually for judicial determination, under contract principles the parties may reserve the issue for the arbitrator's exclusive determination, but only by *clear and unmistakable* evidence. (*AT&T Technologies v. Communication Workers* (1986) 475 U.S. 643, 649 [89 L.Ed.2d 648, 106 S.Ct. 1415] (*AT&T*); *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 [154 L.Ed.2d 491, 123 S.Ct. 588] (*Howsam*)[2]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943–945

---

[2] "The *Howsam* court distinguished between issues of substantive arbitrability and procedural arbitrability. Substantive arbitrability issues are gateway questions about the scope of an arbitration provision and its applicability to a given dispute. The court presumes that parties intended courts to decide issues of substantive arbitrability. The opposite presumption applies to procedural arbitrability issues, such as waiver, or satisfaction of conditions precedent to arbitration." (*James & Jackson, LLC v. Willie Gary, LLC* (Del. 2006) 906 A.2d 76, 79, citing *Howsam, supra*, 537 U.S. at p. 83.)

[131 L.Ed.2d 985, 115 S.Ct. 1920] (*First Options*); *Rent-A-Center, supra*, 561 U.S. \_\_\_, \_\_\_–\_\_\_ [130 S.Ct. 2772, 2778–2779].)

Here, the trial court relied on *Rent-A-Center*, a case under the Federal Arbitration Act (FAA), in which the court designated the "clear and unmistakable" test as a "heightened standard." (*Rent-A-Center, supra*, 561 U.S. at p. \_\_\_, fn. 1 [130 S.Ct. at p. 2777, fn. 1].) In *Rent-A-Center*, the parties' contract delegated to the arbitrator " 'exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.' " (*Id.* at p. \_\_\_ [130 S.Ct. at p. 2777].) The parties there agreed this provision met the heightened standard. (*Id.* at p. \_\_\_, fn. 1 [130 S.Ct. at p. 2777, fn. 1].) The court explained the "clear and unmistakable" requirement "pertains to the parties' *manifestation of intent* [(as to who will decide the gateway issue of arbitrability)], not the agreement's *validity.* . . . [I]t is an 'interpretative rule,' based on an assumption about the parties' expectations. In 'circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter,' [citation], we assume that is what they agreed to. Thus, '[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' " (*Ibid.*, quoting *AT&T, supra*, 475 U.S. at p. 649.)

Several California courts have followed this line of Supreme Court opinions. In *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 [39 Cal.Rptr.3d 437], the court explained: "Although the scope of an arbitration clause is generally a question for judicial determination, the parties may, by *clear and unmistakable* agreement, elect to have the arbitrator, rather than the court, decide which grievances are arbitrable." (Italics added, citing *AT&T, supra*, 475 U.S. 643, 649.) In *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413 [111 Cal.Rptr.3d 468], the court similarly held the contracting parties may reserve to the arbitrator the exclusive authority to determine gateway issues of arbitrability, such as unconscionability, but only if there is clear and unmistakable evidence of such an agreement. The court cautioned that a contract's silence or *ambiguity* about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard. (*Id.* at p. 1440, quoting *First Options, supra*, 514 U.S. at pp. 943–945; see also *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 552 [21 Cal.Rptr.3d 322] (*Dream Theater*); *Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [67 Cal.Rptr.3d 120] (*Murphy*); *Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1286 [73 Cal.Rptr.3d 395].)

In *First Options*, the court acknowledged that the issue of who may determine gateway issues to arbitration "is rather arcane. A party often might

not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. [Citation.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*First Options, supra,* 514 U.S. at pp. 945, 943–945.)

In *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1565 [98 Cal.Rptr.3d 743] (*Parada*), an action by investors against Monex for fraud and other counts, the parties differed as to whether under California law, contracting parties can agree to have the arbitrator decide unconscionability. Relying on *Discover Bank v. Superior Court, supra,* 36 Cal.4th at page 171, the petitioners argued "unconscionability must always be decided by the court, notwithstanding the parties' agreement otherwise. If the party resisting arbitration is claiming the arbitration clause is unconscionable, a court must decide this claim." (*Parada, supra,* at p. 1564.)

The *Parada* court acknowledged that other California courts have held the contracting parties can deviate from the general rule that the court decides gateway issues of arbitrability. (*Parada, supra,* 176 Cal.App.4th at p. 1565, citing *Murphy, supra,* 156 Cal.App.4th at p. 144 and quoting *Bruni v. Didion, supra,* 160 Cal.App.4th at p. 1286.) The *Parada* court declined to weigh in on the issue, because it could decide the appeal on another ground: Even if California law permits parties to contract away their right to have the court decide the issue of arbitrability, the contract at issue did not clearly and unmistakably reserve the issue to the arbitrator. (*Parada,* at p. 1565, citing *Howsam, supra,* 537 U.S. at p. 83 and *First Options, supra,* 514 U.S. at p. 944.) The court noted: "To permit the arbitrator to decide the issue of arbitrability, even if the contract so provides, raises issues we need not reach in this case. One such issue that particularly concerns us is whether having the arbitrator decide the issue of arbitrability presents the arbitrator with a conflict of interest." (*Parada,* at p. 1565.)

## II

### *Analysis*

### A

■ Hartley urges us to hold the *Rent-A-Center* line of federal cases is inapplicable under state law. Our high court has not yet determined whether

state law allows parties to delegate gateway issues such as unconscionability to the arbitrator. (*Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, 688, fn. 12 [121 Cal.Rptr.3d 58, 247 P.3d 130].)[3] As in *Parada, supra,* 176 Cal.App.4th 1554, 1565, we are not required to reach the issue because we agree that even if state and federal law agree on the point, the court's order here is erroneous because the account agreements do not clearly and unmistakably show they agreed to give the arbitrator the exclusive power to decide the gateway issue of arbitrability. Rather, the contract language conflicts on the issue of who is to decide arbitrability and creates ambiguity.

Paragraph 15.11(a) of the purchase agreement provides: "**Arbitration of Claims.** The parties agree that any and all disputes, claims or controversies arising out of or relating to any transaction between them or to the breach, termination, enforcement, interpretation or validity of this Agreement, including the *determination of the scope and applicability of this agreement to arbitrate,* shall be subject to the terms of the [FAA] and shall be submitted to final and binding arbitration before JAMS, or its successor, in Orange County, California, in accordance with the laws of the State of California for agreements made in and to be performed in California." (Italics added.)

Paragraph 15.11(d) of the purchase agreement provides that arbitration "shall be conducted in accordance with the provisions of JAMS Comprehensive Arbitration Rules and Procedures in effect at the time of filing the demand for arbitration." The paragraph advises the customer that he or she can obtain a copy of JAMS's rules on its Internet Web site.

Rule 11(c) of JAMS's rules stated at the relevant time: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, . . . shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Ordinarily, the parties' agreement to arbitrate in accordance with such a rule "is clear and unmistakable evidence of the intent

---

[3] *Sonic-Calabasas A, Inc. v. Moreno, supra,* 51 Cal.4th at page 688, footnote 12, states: "We note that in general, the question whether an arbitration agreement is unconscionable or contrary to public policy is for the court, not the arbitrator, to decide. [Citation.] Recently, the Supreme Court held, in a case brought in federal court, that the question of unconscionability of an arbitration agreement may be for the arbitrator to decide when the agreement has clearly and unmistakably delegated that issue to the arbitrator. (*Rent-A-Center*[, *supra,*] 561 U.S. ___, ___–___ [177 L.Ed.2d 403, 130 S.Ct. 2772, 2778–2779].) Sonic[-Calabasas A, Inc.] has not contended that the arbitration agreement delegates responsibility to the arbitrator to decide questions of the agreement's unconscionability or violation of public policy. We thus have no need to decide whether *Rent-A-Center*'s five-to-four decision applies to actions brought in state court (see *Preston* [*v. Ferrer* (2008)] 552 U.S. 346, 363 [169 L.Ed.2d 917, 128 S.Ct. 978] (dis. opn. of Thomas, J.) [reaffirming the view of Justice Thomas that the FAA does not apply to state court proceedings]), nor whether we would adopt a similar rule as a matter of state law."

that the arbitrator will decide whether a [c]ontested [c]laim is arbitrable." (*Dream Theater, supra*, 124 Cal.App.4th at p. 557.)

Paragraph 15.11(h) of the purchase agreement, however, provides: "**No Waiver of Any Right to Provisional or Injunctive Relief.** *Nothing contained in this Agreement* shall in any way deprive a party of its right to obtain provisional, injunctive, or other *equitable relief from a court of competent jurisdiction*, pending dispute resolution and arbitration. For purposes of any proceeding for provisional, injunctive or *other equitable relief, the parties consent to the jurisdiction of, and venue in, the courts* of the State of California and the United States District Court, located in Orange County, California." (Italics added.) Paragraph 31.8 of the parties' loan agreement contains the same provision.

■ A claim that a contract is unenforceable on the ground of unconscionability is an equitable matter. " 'That equity does not enforce unconscionable bargains is too well established to require elaborate citation.' " (*Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 643 [114 Cal.Rptr.3d 449]; see 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 40, pp. 333–334.) "Under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law *or in equity* for the voiding of any contract. [Citation.] Unconscionability is a recognized contract defense which can defeat an arbitration agreement." (*Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 836 [109 Cal.Rptr.3d 289], italics added.)

Further, paragraph 15.14 of the purchase agreement provides: "**Severability.** In the event that any provision of this Agreement shall be determined by a *trier of fact of competent jurisdiction* to be unenforceable in any jurisdiction, . . . the remainder of this Agreement shall remain binding. . . ." (Italics added.)

In *Parada*, the court held that read together, an arbitration provision and a severability provision in Monex account agreements that were similar to the ones quoted above, created an ambiguity as to who may determine unconscionability, and the ambiguity foreclosed Monex's argument that the issue was for the arbitrator's determination. (*Parada, supra*, 176 Cal.App.4th at pp. 1565–1566.) As to the severability clause, the court explained, "Use of the term 'trier of fact of competent jurisdiction' instead of 'arbitration panel' or 'panel of three (3) arbitrators' suggests the trial court also may find a provision, including the arbitration provision, unenforceable." (*Id.* at p. 1566.)

■ Here, likewise, the account agreements do not meet the heightened standard that must be satisfied to vary from the general rule that the court

decides the gateway issue of arbitrability. The severability clause here uses the term "trier of fact of competent jurisdiction," rather than the term "arbitrator," indicating the court has authority to decide whether an arbitration provision is unenforceable. As in *Parada*, " 'although one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable.' " (*Parada, supra,* 176 Cal.App.4th at p. 1566, quoting *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 893–894.) Further, one paragraph of the arbitration clause here authorizes the court to decide all equitable issues, notwithstanding another paragraph that authorizes the arbitrator to decide all disputes. When an agreement is ambiguous, "the court and not the arbitrator should decide arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide." (*Dream Theater, supra,* 124 Cal.App.4th at p. 552, citing *First Options, supra,* 514 U.S. at p. 945.) We construe ambiguities against Monex as the drafting party. (*Hunt v. Superior Court* (2000) 81 Cal.App.4th 901, 909 [97 Cal.Rptr.2d 215].)

We conclude Hartley is entitled to a judicial declaration of whether the arbitration clause is unconscionable, as requested in the complaint's 20th count.[4] We also conclude that should the court find in favor of Monex on the issue of arbitrability, Hartley is entitled to a prearbitration judicial declaration of whether certain "contract disclaimers" in the account agreements are unconscionable or in violation of public policy, as requested in the complaint's 19th count, and to a court decision on the complaint's 11th count for injunctive relief under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). Declaratory relief and injunctive relief are equitable remedies (*In re Claudia E.* (2008) 163 Cal.App.4th 627, 633 [77 Cal.Rptr.3d 722]; *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 856 [98 Cal.Rptr.3d 300]) reserved to the court under paragraph 15.11(h) of the purchase agreement and paragraph 31.8 of the loan agreement.

B

1

Monex submits that Hartley forfeited the issue of contract ambiguity by failing to raise it at the trial court. Monex asserts it was prejudiced because it lacked the opportunity to present parol evidence of the parties' intent to explain ambiguities in the account agreements. We are unpersuaded.

---

[4] Hartley asks this court to determine whether the arbitration clause in the account agreements is unconscionable. It is not our province, however, to decide this issue in the first instance. (See *AT&T, supra,* 475 U.S. at pp. 651–652.)

■ Generally, in a motion to compel, the "petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903] (*Engalla*).) When, however, as here, "the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the *claimant* must bear the burden of a clear demonstration of that purpose." (*Steelworkers v. Warrior & Gulf Co.* (1960) 363 U.S. 574, 583, fn. 7 [4 L.Ed.2d 1409, 80 S.Ct. 1347], italics added (*Warrior & Gulf*); see *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1191 & fn. 8 [94 Cal.Rptr.3d 918] (*Gilbert Street*); *General Motors Corp. v. Pamela Equities Corp.* (5th Cir. 1998) 146 F.3d 242, 249; *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe* (Nev. 2010) 245 P.3d 1164, 1169, fn. 3.) In *Gilbert Street*, the court cited *Warrior & Gulf* for the rule that "the *normal* situation is that *courts* decide arbitrability; a party seeking to upset normal expectations must therefore make a 'clear demonstration' to the contrary." (*Gilbert Street*, at p. 1191, citing *Warrior & Gulf*, at pp. 582–583, fn. 7.)

Hartley consistently requested that the *court* decide the gateway issue of whether the arbitration clause in the account agreements was unconscionable. The evidentiary burden to prove otherwise was Monex's, but with its petition it submitted no parol evidence to explain the ambiguities *on the face* of the account agreements. Further, Monex did not argue the gateway issue of arbitrability was for the arbitrator rather than the court. Rather, Monex argued the merits of Hartley's unconscionability claim, raising at least an inference that it agreed the matter was for the court's decision. Thus, Hartley was not put on any type of notice. For the first time in its reply brief, Monex argued the issue of arbitrability was for the arbitrator's decision, citing *Rent-A-Center, supra*, 561 U.S. ___, ___–___ [130 S.Ct. 2772, 2777–2778]. Again, however, Monex presented no parol evidence to explain the contract ambiguities. Monex ignored the ambiguities and argued the arbitration clause in the account agreements is clear and unmistakable proof of the parties' intent to delegate the issue exclusively to the arbitrator.

The court granted Hartley's request to submit supplemental briefing to address Monex's reply. Hartley did argue the arbitration clause is ambiguous, but on the issue of whether the FAA or California law applies. Hartley argued the ambiguity should be construed against Monex, and thus California law applies, and under California law, the court must decide arbitrability.

 In her supplemental brief, Hartley should have addressed the contract ambiguities on which she relies now. While she could not sit idly by, her original memorandum of points and authorities did point out a contract ambiguity, that paragraph 15.11(h) of the purchase agreement "permits either party to go to Court for injunctive or equitable relief." Additionally, at the hearing, Hartley advised the court that "the contract itself carves out injunctive and equitable relief claims and says they go to the court in Orange County." The court's order states, "During oral argument, plaintiff referenced the carve out provisions of the arbitration agreement." The main purpose of the forfeiture rule is to protect the trial court and the opposing party from unfairness (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251 [85 Cal.Rptr.3d 371]), and we perceive no unfairness. Both Monex and the court were aware of the ambiguity issue, and it was Monex's burden to meet the heightened "clear and unmistakable" test, which it did not do.

2

Further, Monex's reliance on *Dream Theater, supra,* 124 Cal.App.4th 547, is misplaced. In *Dream Theater*, the court held that "venue provisions" in a contract and consulting agreement did not expressly limit the scope of an arbitration clause. The venue provisions specified "that any action arising out of the agreements may be brought in any state or federal court in Los Angeles having jurisdiction over the dispute, and the parties waive any objection to venue in a Los Angeles court." (*Id.* at p. 556.) The court concluded, "No matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies, such as a preliminary injunction, appointment of a receiver, or a writ of attachment or of possession." (*Ibid.*)

 Here, the contract documents are quite different, and they give the court the authority to hear all equitable matters, which includes the gateway issue of unconscionability. It is axiomatic that cases are not authority for issues not discussed. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].) We also reject Monex's claim that paragraph 15.11(h) of the purchase agreement creates no ambiguity because it is merely an expression of Code of Civil Procedure section 1281.8, under which the trial court has authority to grant injunctive relief pending contractual arbitration, but "only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (Code Civ. Proc., § 1281.8, subd. (b); see *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 453 [60 Cal.Rptr.2d 641].) Paragraph

15.11(h) neither refers to Code of Civil Procedure section 1281.8 nor restricts the court's authority to issue injunctive relief in this manner.

Monex also asserts that in *Monex Deposit Co. v. Gilliam* (C.D.Cal. 2009) 616 F.Supp.2d 1023, "the federal district court evaluated the same Monex agreement at issue here and held that the arbitration provision effectively assigned to the arbitrator the issue whether the arbitration agreement was valid and enforceable." In *Monex Deposit Co. v. Gilliam,* however, no issue of ambiguity was raised. The opinion does not discuss language similar to the severability paragraph of the account agreements here. The cross-complainant there conceded that a variety of his claims were subject to arbitration. He argued only that his claim for the violation of RICO (Racketeer Influenced and Corrupt Organizations Act; 18 U.S.C. § 1961 et seq.) was not subject to arbitration because treble damages would be unavailable. (*Monex Deposit Co. v. Gilliam,* at pp. 1024–1025.)

■ Additionally, Monex argues that under *Rent-A-Center, supra,* 561 U.S. ___ [130 S.Ct. 2772], the court cannot consider a challenge to the arbitration provisions of the account agreements on the ground of unconscionability, because Hartley does not specifically allege the portion of the arbitration agreement that delegates specified powers to the arbitrator, paragraph 15.11(a) of the purchase agreement, is unconscionable. Rather, she claims the entire arbitration agreement is unconscionable. In *Rent-A-Center,* however, there was no question that the parties had delegated gateway issues of arbitrability exclusively to the arbitrator. The court held that under that scenario, the court could not hear an issue of arbitrability unless there was a specific challenge to the delegation clause of the arbitration agreement, as opposed to a general challenge to the entire arbitration agreement. (*Rent-A-Center, supra,* 561 U.S. at pp. ___–___ [130 S.Ct. at pp. 2778–2780].) *Rent-A-Center* does not involve a contract that, as here, contains conflicting and ambiguous provisions on who is to decide the issue of arbitrability. *Rent-A-Center* cautioned that " '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.' " (*Id.* at p. ___, fn. 1 [130 S.Ct. at p. 2777, fn. 1].)

## DISPOSITION

Let a writ issue directing the court to vacate its orders of August 12 and 24, 2010, and enter an order requiring the court to decide the gateway issue of unconscionability of the arbitration provisions of the account agreements. If the court determines the matter is subject to arbitration, it is to adjudicate

the complaint's additional requests for injunctive and declaratory relief before arbitration is held. Hartley is entitled to costs as the prevailing party. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Nares, J., and Aaron, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 19, 2011, S195436.