Filed 4/1/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WILLIAM DENNISON, Individually and as Trustee, etc., et al., | B295350 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. SS029327) |
| v. | |
| ROSLAND CAPITAL LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Craig Karlan, Judge. Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Tracy D. Forbath, Craig Holden and Sudhir L. Burgaard for Defendants and Appellants.

The Berman Law Firm and Bruce A. Berman for Plaintiffs and Respondents.

\* \* \* \* \* \* \* \*

This is an appeal from an order denying a motion to compel arbitration. Plaintiff William Dennison made four purchases of precious metals from defendant Rosland Capital LLC, then sued Rosland Capital and its sales agent Matthew M. Smith, alleging they misled him. Defendants moved to compel arbitration pursuant to their Customer Agreement. The trial court found the contract was procedurally and substantively unconscionable, and denied defendants' petition. We agree and affirm.

**BACKGROUND**

In September 2018, Mr. Dennison sued defendants in his individual capacity, and in his capacity as trustee for the Dennison Family Trust. The first amended complaint alleged that in 2016, Mr. Dennison contacted Rosland Capital after seeing its television commercials promoting investment in precious metals. At the time, he was 82 years old, and had no experience investing in metals. Mr. Smith discussed the risks Mr. Dennison faced if he kept his retirement funds in the bank and the profit he could secure if he invested with Rosland Capital. Soon thereafter, Mr. Dennison signed and returned documents he received by FedEx from Mr. Smith, with a check for $49,982. In return, Mr. Dennison received 40 gold and 322 silver coins.

After Mr. Dennison's first investment, Mr. Smith repeatedly called him, encouraging him to make further investments. Mr. Dennison placed additional orders for $50,000 in September 2016, $49,500 in March 2017, and another $49,968 a week later. The coins he bought from Rosland Capital were worth significantly less than what Mr. Dennison paid for them.

Defendants filed their petition to compel arbitration in December 2018, arguing all of plaintiffs' claims were subject to

2

arbitration based on the Customer Agreement Mr. Dennison signed when he placed his first order. Defendants also sought their attorney fees and costs of $7,300 for having to bring their petition to compel arbitration.

Appended to their petition was a copy of the Customer Agreement. The standard form agreement is two pages long, in two compressed side-by-side columns, printed in extremely small font. It is impossible to read without a magnifying glass.

When the font size is increased by 150 percent, one can see that Paragraph 15.5 of the agreement provides: "Customer agrees to arbitrate all controversies between customer and Rosland (including any of Rosland's current or former officers, directors, managers, members, employees or agents) arising out of or relating in any way to the products or this agreement, including the determination of the scope or applicability of this agreement to arbitrate. . . ." (Capitalization omitted.)

Plaintiffs opposed the petition, arguing the Customer Agreement was procedurally and substantively unconscionable, and therefore the arbitration clause was unenforceable.

Mr. Dennison's declaration in support of the opposition testified that he is a retired Navy aviator, and in April 2016, he saw Rosland Capital's television commercials warning about stock market volatility and inflation, and touting the security of investing in precious metals. He responded to the ads, and received a call back on April 29, 2016 from Mr. Smith, an account representative with Rosland Capital. The call lasted for more than 30 minutes.

Mr. Dennison told Mr. Smith he was a retired widower in his 80's, and that he was interested in learning about silver investments. Mr. Smith explained that investing in precious

3

metals would hedge against the risks faced by keeping retirement savings in the bank and that there was never a better time to invest in precious metals. Mr. Smith held himself out as an expert, promising to advise Mr. Dennison on how to successfully invest. Mr. Smith never mentioned a customer agreement, nor did he tell Mr. Dennison he would receive documents to sign that would strip Mr. Dennison of his legal rights.

Within a few days, Mr. Dennison received a FedEx package from Mr. Smith. He signed the enclosed documents and returned them with a check for $49,982 to Rosland Capital using the self-addressed envelope Mr. Smith included in the package.

Defendants argued in their reply brief the Customer Agreement delegated to the arbitrator the authority to decide if the agreement is unconscionable; the agreement is not unconscionable; and any unconscionable provisions may be severed from the agreement.

The trial court found the delegation clause was not enforceable, the contract was procedurally and substantively unconscionable, and the arbitration clause could not be made enforceable by severing the unconscionable provisions of the contract. The trial court denied the petition.

This timely appeal followed.

## DISCUSSION

Code of Civil Procedure section 1281.2 requires a trial court to grant a petition to compel arbitration "if [the court] determines that an agreement to arbitrate the controversy exists." (*Ibid*.) The party seeking to compel arbitration has the initial burden to plead and prove the existence of a valid arbitration agreement that applies to the dispute. Once that burden is satisfied, the party opposing arbitration must prove any defense to the

4

agreement's enforcement, such as unconscionability. (*Ibid*.; see also *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.) On appeal from the denial of a petition to compel arbitration, we apply the de novo standard of review if the trial court's ruling rests on a decision of law, and the facts are undisputed. (*Avery,* at p. 60.)[1]

## 1. The Arbitration Agreement Does Not Clearly and Unmistakably Delegate Authority to the Arbitrator to Decide Unconscionability.

Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability. (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 891-892.) The arbitration clause here provides in pertinent part that the "Customer agrees to arbitrate all controversies between customer and Rosland . . . arising out of or relating in any way to the products or this agreement, *including the determination of the scope or applicability of this agreement to arbitrate*." (Italics added & capitalization omitted.) However, paragraph 15.11 of the Customer Agreement provides: "The terms and provisions in this Agreement are severable. *If any provision of this Agreement is held by a court of competent jurisdiction to be void, invalid, or unenforceable*, then that provision will be enforced to the maximum extent permissible and the remaining terms and provisions of this Agreement will continue in full force and effect." (Italics added.)

---

[1] California law, and not the Federal Arbitration Act, applies to this dispute, because the agreement expressly states that the agreement is governed by California law.

Where, as in paragraph 15.11 of the Customer Agreement, a contract includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision, there is no clear and unmistakable delegation to the arbitrator to decide if the arbitration agreement is unconscionable. (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 891, 893-894 [arbitration agreement did not clearly provide issues of enforceability were to be decided by the arbitrator due to severability provision that " 'any provision of this arbitration agreement shall be determined by the arbitrator or *by any court* to be unenforceable. . . .' "]; *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1566 [" 'although one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable' "]; *Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1257-1258 [same]; cf. *Aanderud v. Superior Court*, *supra*, 13 Cal.App.5th at pp. 893-894 [distinguishing *Baker*, *supra*, on the basis that the arbitration provision at issue "here expressly states that any disputes, which include those over the scope and applicability of the arbitration provision, are to be resolved through binding arbitration except those within small claims court jurisdiction. Since arbitration is not at issue in a small claims court action, the small claims court can only find unenforceable provisions . . . other than the arbitration provision. Thus, when the severability clause provides for severance of any provision . . . , the court being referred to is the small claims court, which is not empowered to determine the scope or applicability of the arbitration provision."].)

6

We therefore determine it was for the court, and not the arbitrator, to determine arbitrability.

**2.     The Arbitration Agreement Is Unconscionable.**

Unconscionability is determined based on the unique factual situations of each case.  (*Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 644 [" '[W]hile unconscionability is ultimately a question of law, numerous factual inquiries bear upon that question.  [Citations.] The business conditions under which the contract was formed directly affect the parties' relative bargaining power, reasonable expectations, and the commercial reasonableness of the risk allocation as provided in the written agreement.' "].)

Unconscionability has both a procedural and a substantive element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results.  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)  " 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.]  But they need not be present in the same degree. . . .  [Citations.]  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Ibid.*)

Defendants say Mr. Dennison cannot show procedural unconscionability because he had a lifetime of experience to draw upon, including his military service, and he could have negotiated the terms of the arbitration clause.  An 82-year-old consumer who

7

calls a telephone number displayed in a television ad to make his first-ever investment in the highly volatile precious metals market, no matter how sophisticated he may be in other matters, cannot reasonably be expected to consider negotiating the terms of a form contract in such tiny print it cannot be read without a magnifying glass.  In any event, the point is of no consequence because "[i]n the context of consumer contracts, [the Supreme Court has] never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 914.)

Here, the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability.  (*Sanchez v. Valencia Holding Co., LLC*, *supra,* 61 Cal.4th at p. 915.)  Thus, we consider the substantive terms of the contract to determine if they are manifestly unfair or one-sided.  We discuss below various aspects of the agreement we find render it unconscionable.  There are other problematic terms in the contract, but those discussed below render it unnecessary to address the other unconscionable terms.

### a.    Lack of mutuality

The Customer Agreement requires plaintiffs, but not defendants, to arbitrate, and defendants did not sign the agreement.  Paragraph 15.7 states Mr. Dennison must pay defendants' costs and attorney fees if defendants obtains "any relief" on a motion to compel arbitration, but provides no mechanism for Mr. Dennison to recover his fees if he successfully resists arbitration.

"Substantively unconscionable terms may 'generally be described as unfairly one-sided.' [Citation.]  For example, an

agreement may lack 'a modicum of bilaterality' and therefore be unconscionable if the agreement requires 'arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party.' " (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 713, quoting *Armendariz, supra,* 24 Cal.4th at p. 119; see also *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86 [finding no mutuality where employer did not sign arbitration agreement, and that unilateral attorney fees provision is substantively unconscionable].)

### b. Limitations on defendants' liability

Paragraphs 14.2, 14.3, and 15.10 of the Customer Agreement limit defendants' liability, and are one-sided and an unfair surprise. For example, paragraph 14.2 provides that Rosland Capital is not liable "to customer or any third party for consequential, incidental, indirect, punitive or special damages . . . arising out of, relating to or connected with the products or this agreement. . . ." Paragraph 14.3 puts a cap on damages, providing that "[i]n no event will Rosland's aggregate liability arising from, relating to, or in connection with the products or this agreement exceed the amount that customer paid for the products, less the fair market value of such products." (Capitalization omitted; see *Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 222-223 [limitation on remedies supports finding of substantive unconscionability].)

### c. Statute of limitations

The one-year statute of limitations to bring claims in paragraph 15.9 applies only to Mr. Dennison, and severely shortens the time in which he may bring a claim. For example, plaintiffs' elder abuse claim has a limitations period of four years from the discovery the facts constituting financial elder abuse.

9

(Welf. & Inst. Code, § 15657.7; see *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1283 ["Moreover, the unilateral arbitration clause places time limitations upon plaintiff's assertion of any claims against defendant. . . . Of course, the employment agreement limits none of the employer's rights against the employee (including the statutory time for bringing suit against him)."].)

3. **We Cannot Save the Arbitration Agreement by Severing a Single Offending Clause Because the Agreement Is Permeated With Unconscionable Terms.**

"The final question is whether the unconscionable provisions warrant a refusal to enforce the entire arbitration agreement, or whether the offending provisions may be limited or severed to avoid an unfair result. 'In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is 'permeated' by unconscionability.' " (*Bakersfield College v. California Community College Athletic Assn.* (2019) 41 Cal.App.5th 753, 769, citations omitted.)

"An agreement to arbitrate is considered 'permeated' by unconscionability where it contains more than one unconscionable provision. 'Such multiple defects indicate a systematic effort to impose arbitration on [the nondrafting party] not simply as an alternative to litigation, but as an inferior forum that works to the [drafting party's] advantage.' An arbitration agreement is also deemed 'permeated' by unconscionability if 'there is no single provision a court can strike or restrict in order

10

to remove the unconscionable taint from the agreement.  If 'the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms,' the court must void the entire agreement." (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 292, citations omitted.)

Here, as described above, the arbitration agreement contains numerous unfair and one-sided provisions, and we would have to rewrite the Customer Agreement by severing most of its terms and adding new ones in order to compel arbitration. We believe the Customer Agreement should be rewritten, but we will not do so here.

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.

11