Filed 12/31/20 Certified for Publication 1/29/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DANIEL CABATIT et al., | |
| Plaintiffs and Respondents, | C089576 |
| v. | (Super. Ct. No. STK-CV-UBT-2019-0000847) |
| SUNNOVA ENERGY CORPORATION et al., | |
| Defendants and Appellants. | |

Daniel and Indiana Cabatit entered into a solar power lease agreement (the agreement) with Sunnova Energy Corporation.[1]  After a solar power system was installed on the Cabatits' residence, the Cabatits sued Sunnova, alleging damage to their roof. Sunnova moved to compel arbitration based on an arbitration clause in the agreement, but the trial court found the arbitration clause unconscionable and denied the motion.

---

[1] Like the parties, we treat Sunnova Energy Corporation and Infinity Energy, Inc. as the same entity for purposes of this opinion, and refer to them collectively as Sunnova.

Sunnova now contends (1) the arbitration clause requires the Cabatits to submit to an arbitrator the question whether the clause is enforceable, (2) the trial court erred in finding the arbitration clause unconscionable, and (3) despite the trial court's conclusion to the contrary, the rule announced in *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*) -- that an arbitration agreement waiving statutory remedies under the Consumers Legal Remedies Act, the unfair competition law, and the false advertising law is unenforceable -- does not apply to the circumstances of this case.

We conclude (1) Sunnova did not assert in the trial court that the arbitrator must determine whether the clause is enforceable, and hence we will not address the issue, (2) the arbitration clause is procedurally and substantively unconscionable and therefore unenforceable, and (3) we need not consider whether the *McGill* rule applies here because general considerations of unconscionability, independent of the *McGill* rule, support the trial court's determination.

We will affirm the trial court's denial of the motion to compel arbitration.

BACKGROUND

In opposition to Sunnova's motion to compel arbitration, the Cabatits filed the declaration of Indiana Cabatit detailing the circumstances leading to the signing of the agreement. Sunnova did not present any evidence concerning those circumstances other than the text of the agreement.

After a Sunnova salesperson went to the Cabatits' home and made a presentation about solar products, the Cabatits selected a solar power lease plan and the salesperson opened the proposed agreement on an electronic device. The salesperson said the Cabatits did not need to read the agreement language because he would go over the details, but the Cabatits would need to sign the agreement and initial certain parts before any work could be done. The salesperson scrolled through the agreement language quickly, indicating where signatures or initials were needed.

2

Indiana Cabatit speaks and understands English fairly well, but she does not understand complicated or technical terms.  As the salesperson scrolled through the agreement language, Indiana Cabatit signed or initialed where the salesperson indicated, even though she did not understand most of what he was saying.  The salesperson did not explain anything about arbitration.

The Cabatits had no computer and no internet access.  They did not receive a copy of the agreement until this dispute arose and their daughter obtained a copy.

The Cabatits sued Sunnova, seeking cancellation of the agreement as well as injunctive and declaratory relief.  They alleged Sunnova damaged their roof while installing the solar panels, then removed the solar panels and replaced the Cabatits' roof with an inferior type.  They further alleged Sunnova violated the California Home Improvement Law, Home Solicitation Law, Unfair Competition Law, and Consumer Legal Remedies Act.

Sunnova moved to compel arbitration under the arbitration clause in the agreement.  The trial court found the arbitration clause to be procedurally and substantively unconscionable and denied the motion to compel arbitration.  The trial court also concluded that the arbitration clause is unenforceable under the rule announced in *McGill, supra,* 2 Cal.5th 945.

DISCUSSION

I

Sunnova contends the arbitration clause requires the Cabatits to submit to an arbitrator the question whether the clause is enforceable.

"When . . . 'the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose.' [Citations.] . . . '[T]he normal situation is that courts decide arbitrability; a party seeking to upset normal

3

expectations must therefore make a "clear demonstration" to the contrary.' [Citation.]" (*Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1259, italics omitted.) The delegation of this issue to the arbitrator must be clear and unmistakable. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 781.)

If a party fails to raise an issue or theory in the trial court, we may deem consideration of that issue or theory forfeited on appeal. (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1046.)

Sunnova did not raise this issue in the trial court. After the Cabatits, in their respondents' brief in this appeal, noted Sunnova's failure to raise the issue in the trial court, Sunnova responded that it had argued in the trial court that the arbitration clause contained a clear and unmistakable delegation provision. But as best we can tell based on our review of the record, Sunnova said nothing in the trial court about the arbitrator deciding whether the arbitration clause was enforceable. Instead, Sunnova's moving papers appear to assume that the trial court would decide whether the arbitration clause was enforceable. And at the hearing on the motion to compel arbitration, Sunnova did not assert that the arbitrator should decide arbitrability. We therefore conclude Sunnova forfeited consideration of this issue.

II

Sunnova next contends the trial court erred in finding the arbitration clause unconscionable.

Unconscionability of the arbitration clause is a defense to a motion to compel arbitration. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142.) " 'One common formulation of unconscionability is that it refers to " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power,

4

the latter on overly harsh or one-sided results.' " (*Id.* at p. 1133.) "Arbitration is favored in this state as a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115 (*Armendariz*).)

The party opposing a motion to compel arbitration bears the burden of showing unconscionability. (*Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 102.) The trial court may exercise its discretion to refuse to enforce a contract if it is both procedurally and substantively unconscionable. In making its determination, the trial court employs a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114)

*Procedural Unconscionability*

A primary question concerning procedural unconscionability is whether the arbitration clause was part of a contract of adhesion, which is a " 'standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz, supra,* 24 Cal.4th at p. 113.) "A finding of a contract of adhesion is essentially a finding of procedural unconscionability. [Citations.]" (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853.)

The circumstances of the signing of the agreement in this case support the trial court's finding that it is a contract of adhesion. Sunnova drafted the agreement language, and there is no indication the Cabatits were given any option other than to take it or leave it. Indiana Cabatit did not understand the complicated and technical terms, and they were not explained to her. The agreement language was presented on an electronic device, and the salesperson scrolled through to the parts to be signed or initialed. The salesperson did not explain anything about the arbitration clause. The Cabatits were told they would need to sign the agreement before work could start, and they were not provided a copy of

5

the agreement after it was signed. In sum, the agreement was Sunnova's standard contract, and the Cabatits had no opportunity to bargain over its terms. (*Armendariz, supra,* 24 Cal.4th at p. 113.) It was a procedurally unconscionable contract of adhesion.

Sunnova challenges the procedural-unconscionability finding by arguing (1) Indiana Cabatit signed a statement that she had read the terms of the agreement, (2) the arbitration clause is conspicuous, (3) there were no facts showing Sunnova had superior bargaining strength or that the Cabatits were without a meaningful choice whether to sign the agreement, and (4) the Cabatits had the right to cancel the agreement within seven days. We address each of these arguments in turn.

Regarding the signatures and initials on the agreement, including Indiana Cabatit's initials next to the arbitration clause, the evidence is uncontroverted that the agreement was presented on an electronic device and the salesperson scrolled through it, indicating where to initial and sign. There is evidence that Indiana Cabatit signed or initialed where the salesperson indicated, even though she did not understand most of what he was saying, and that the salesperson did not explain anything about arbitration. Sufficient evidence supports the trial court's determination in this regard.

Whether Sunnova made the arbitration clause conspicuous depends on how the agreement was presented to the Cabatits. Here, the evidence is that the salesperson scrolled through the agreement, and the arbitration clause was not called to the Cabatits' attention.

Sunnova observes that the Cabatits were under no obligation or constraint to enter into the agreement with Sunnova. They could have chosen another solar company or decided not to do a solar power lease plan. But that is the point. Sunnova presented the Cabatits with a standardized agreement that it drafted, giving them only the opportunity to adhere to the contract or reject it.

Moreover, the evidence indicates any right the Cabatits had to cancel within seven days was meaningless because Sunnova did not give them a copy of the agreement during

6

the relevant time period and there is no evidence such a right was explained to the Cabatits.

A finding of procedural unconscionability is highly dependent on context. (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 983.) Here, the context of the signing of the agreement and the initialing of the arbitration clause indicates oppression and surprise, supporting a finding of a high degree of procedural unconscionability.

*Substantive Unconscionability*

Substantive unconscionability focuses on whether the terms of an agreement are overly harsh, unduly oppressive, or so one-sided as to shock the conscience. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910.)

The arbitration clause here is clearly one-sided. The agreement provided that the Cabatits were required to arbitrate their claims, but it allowed Sunnova to file a court action in the event of the Cabatits' default. It provided: "If you [meaning the Cabatits] are in default under this Lease, Sunnova may elect, at its sole discretion, remedies available under the terms of this Lease, at law, or in equity. We agree that any other dispute, claim or disagreement between us . . . shall be resolved exclusively by arbitration except as specifically provided below." A "default" is defined as failure to make a payment, failure to perform an obligation under the lease, providing false information, or assigning the lease without prior authorization. In other words, Sunnova reserved the right to take most of its claims to court but purported to deny the Cabatits the same opportunity.

Sunnova claims the arrangement is not one-sided because the arbitration clause also allows the Cabatits to obtain (1) injunctive relief for any threatened conduct that could cause irreparable harm, (2) a judgment confirming the award, or (3) a small claims judgment. But given the breadth of the term "default" favoring Sunnova, and the limitations imposed on the Cabatits regarding their own available court relief, the evidence supports the trial court's determination.

7

Sunnova also claims we should uphold the arbitration clause despite its one-sidedness because Sunnova has a legitimate commercial need for the one-sidedness. "[A] contract can provide a 'margin of safety' that provides the party with superior bargaining strength, a type of extra protection for which it has a legitimate commercial need without being unconscionable. [Citation.] However, unless the 'business realities' that create the special need for such an advantage are explained in the contract itself, . . . it must be factually established." (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1536.) Here, any special need for the one-sidedness was not factually established. Sunnova claims it needed more access to the courts "to seek relief arising out of a customer's failure to make payments provided under the Lease, or to seek immediate injunctive relief in the event a customer engages in, *inter alia*, misuse or theft of Sunnova's systems, or modifies the system so as to create a hazardous condition." None of this is explained in the agreement, and it does not tend logically to support giving Sunnova access to the courts while denying the Cabatits the same privilege.

The trial court also found that the arbitration clause excessively limited discovery and prohibited the Cabatits from appealing the arbitrator's ruling. We need not consider these additional reasons for denying the motion to compel arbitration because the significant procedural unconscionability, combined with the unjustifiable one-sidedness of the arbitration clause, supported the trial court's exercise of discretion to deny enforcement of it.

### III

In addition, Sunnova claims the rule announced in *McGill, supra,* 2 Cal.5th 945, does not apply to the circumstances of this case. The trial court had concluded that the arbitration clause is unenforceable under the rule announced in *McGill.* In that case, the California Supreme Court held that an arbitration agreement waiving statutory remedies under the Consumers Legal Remedies Act, the unfair competition law, and the false advertising law is unenforceable. (*Id.* at pp. 951-952.) We need not consider this issue

8

because general considerations of unconscionability, independent of the *McGill* rule, support the trial court's denial of the motion to compel arbitration.

### DISPOSITION

The order is affirmed. The Cabatits are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)[2]

_____/S/_____
MAURO, J.

We concur:

\_\_\_\_\_/S/_____
BLEASE, Acting P. J.

\_\_\_\_\_/S/_____
DUARTE, J.

---

[2] The Cabatits request an award of attorney's fees on appeal under statutes authorizing attorney's fee awards. However, the Cabatits must move for such attorney's fees in the trial court in the first instance. (Cal. Rules of Court, rule 3.1702(c); see also *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1277-1278.) We express no opinion concerning their entitlement to attorney's fees.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| | |
|---|---|
| DANIEL CABATIT et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> SUNNOVA ENERGY CORPORATION et al., <br><br> Defendants and Appellants. | C089576 <br><br> (Super. Ct. No. STK-CV-UBT-2019-0000847) <br><br> ORDER GRANTING REQUEST TO PUBLISH |


APPEAL from a judgment of the Superior Court of San Joaquin County, Barbara A. Kronlund, Judge. Affirmed.

MCDOWELL HETHERINGTON, Jodi K. Swick, Allison J. Fernandez, and Michael D. Matthews, Jr. (admitted *pro hac vice*), for Defendants and Appellants.

KOSTAS LAW FIRM and James S. Kostas, for Plaintiffs and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on December 31, 2020, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


_____/S/_____
BLEASE,  Acting P. J.


_____/S/_____
MAURO, J.


_____/S/_____
DUARTE, J.

2