Filed 3/29/21  Van Dyke & Assn. v. Oliver CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| VAN DYKE & ASSOCIATES, APLC, | D077091 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00059468-CU-BC-CTL) |
| MARY SUSAN MACK OLIVER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Van Dyke & Associates, Richard S. Van Dyke and Geoffrey J. Farwell for Plaintiff and Appellant.

Campbell Law Group, John B. Campbell; Caldarelli Hejmanowski Page & Leer, Marisa Janine-Page and Caitlin E. Macker for Defendants and Respondents.


Plaintiff Van Dyke & Associates, APLC (Plaintiff), a law firm, appeals from an order of the trial court denying its petition to compel arbitration of the underlying fee dispute with its former clients, defendants Mary Susan

Mack Oliver and Martha Ann Mack Abbott (together, Defendants). On appeal, Plaintiff presents only one issue for our determination: Whether the trial court erred in ruling that the arbitration provision delegated to the court, rather than to the arbitrator, the threshold issue of arbitrability.

In performing its analysis of the issue, the trial court reviewed the terms of the applicable fee agreement, determined that certain conditions had not been satisfied, and ruled that "no operative contract was formed." In doing so, the court necessarily considered evidence of (non)performance and (non)satisfaction of conditions *of a contract*. This was error. When tasked with determining whether the parties delegated issues of arbitrability to the court or the arbitrator, the court's initial responsibility should have been to determine *whether* a contract exists (not whether conditions have been performed or satisfied) and, if so, to interpret *the delegation clause* (not the entire arbitration provision) to determine whether the parties "clearly and unmistakably" agreed that the arbitrator is to determine questions of arbitrability. Unless this standard is met, the court, not the arbitrator, must determine threshold issues of arbitrability.

In the trial court, however, neither side argued for an interpretation of the delegation clause (as opposed to the full arbitration provision) or for the application of the "clear and unmistakable" standard to such language. Thus, by raising this argument for the first time on appeal, Plaintiff forfeited appellate review of the issue. In any event, an application of the correct standard leads to the same result: The parties entered into a fee agreement; the agreement contained an arbitration provision; because the arbitration provision did not "clearly and unmistakably" delegate to the arbitrator the determination of issues of arbitrability, the court was required to decide such issues. By reaching and deciding issues related to performance or

2

satisfaction of conditions of the contract—which Plaintiff does not challenge on appeal—the court necessarily decided that it, not the arbitrator, would decide the threshold issue of arbitrability (and proceeded to provide a substantive ruling regarding performance).  Since the court's implied ruling regarding arbitrability is a correct decision of the only issue before us, we affirm the trial court's order denying Plaintiff's petition to compel arbitration.

## I.  STATEMENT OF THE CASE

In November 2018, Plaintiff filed a Judicial Council form complaint against Defendants and Bank of America, N.A., to collect attorney fees and costs.  The complaint contains three causes of action:  breach of contract against Defendants; common counts against Defendants; and declaratory relief against Defendants and Bank of America, N.A.

In the cause of action for breach of contract, Plaintiff alleges that it and Defendants entered into an "Attorney-Client Representation and Fee Agreement (Hourly)" dated February 27, 2013 (2013 Fee Agreement).  (Bolding and some capitalization omitted.)  In the 2013 Fee Agreement, the parties described the scope and duties of Plaintiff's services to "be limited to Special Litigation Counsel only" in three specified probate court actions.  Plaintiff alleges that, on September 24, 2018, "[Defendants] breached the [2013] Fee Agreement by failing to remit the balance due for legal services performed through the date of termination" and seeks damages in the amount of "the unpaid balance of $236,808.27."

In the second cause of action, Plaintiff alleges common counts for an open book account and for work, labor, services, and materials rendered.  Consistent with the breach of contract claim, Plaintiff seeks $236,808.27 for the work, labor, services, and materials rendered.

3

In its third cause of action, Plaintiff alleges that it has asserted a valid "Attorney's Contractual Lien on and against the interests of, and future distributions payable to, [Defendants] as beneficiaries and heirs under" a specifically identified trust and a specifically identified estate.  Plaintiff further alleges that it sued Bank of America, N.A., in this declaratory relief cause of action "as an account debtor-trustee" of the trust which "holds money or property . . . subject to Plaintiff's claim of [contractual] lien."[1]  The contract on which the lien is alleged is the 2013 Fee Agreement.  Plaintiff seeks a "judicial declaration . . . [of] Plaintiff's rights under the [2013 Fee Agreement.]"

Plaintiff attached as exhibits to its complaint copies of what it alleged to be the 2013 Fee Agreement and the notice of attorney's contractual lien based on the 2013 Fee Agreement.

A.    *The Underlying Probate Matters*

Under a heading entitled "Scope and Duties," the 2013 Fee Agreement identifies two "now pending" matters in the probate court (Underlying Probate Matters).[2]  (Bolding and some capitalization omitted.)  Plaintiff represented Defendants in the Underlying Probate Matters, in which Defendants did not prevail at trial.[3]  After entry of judgment, Plaintiff (on

---

[1]    The record on appeal contains no filings by the bank, and the bank is not a party to the appeal.

[2]    The "Scope and Duties" of the 2013 Fee Agreement also identifies a "previously pending" matter in the probate court.  (Bolding and some capitalization omitted.)  The parties do not mention this matter in their appellate briefing.

[3]    According to each of Defendants, "Mr. Van Dyke had lost all of the claims that [he] had tried on our behalf."

4

behalf of Defendants and four others who are not parties to the present litigation) prepared, and in June 2018 filed, a notice of appeal from the judgment in the Underlying Probate Matters.

In late September 2018, Defendants hired and substituted new counsel in place of Plaintiff in the Underlying Probate Matters. Correspondingly, in early October 2018, new counsel replaced Plaintiff as Defendants' counsel in the appeal from the judgment in the Underlying Probate Matters.

For purposes of determining whether Defendants had meritorious arguments for an appeal, replacement counsel spoke with prior trial counsel (Plaintiff's Scott Van Dyke), read the reporters transcripts from the trial, and reviewed 38 boxes of documents from Plaintiff's office. Following this work and consultation with Defendants by new counsel, Defendants decided not to pursue their appeal from the judgment initiated by Plaintiff in the Underlying Probate Matters.

B.    *The Present Action*

In January and May 2019, respectively, Oliver and Abbott each filed an answer to the complaint in this action, denying the allegations and asserting various affirmative defenses.

A few months later, in July 2019, Plaintiff first identified the existence of a *second* fee agreement between Plaintiff and Defendants—i.e., one entitled "Attorney-Client Representation and Fee Agreement (Flat Fee/Hybrid Contingency)" dated July 7, 2018 (2018 Fee Agreement). Although neither of Defendants recalled reaching a new fee agreement with Plaintiff or signing this document and neither had in her possession a signed copy, each acknowledged that a signature on the document appeared to be hers.

5

Toward the end of July 2019, Defendants together moved for leave to file individual first amended answers and a joint cross-complaint. The proposed cross-complaint was brought by Defendants and a living trust administered by Abbott (as cross-complainants) against Plaintiff, Plaintiff's "Defined Benefit Pension Plan," and Van Dyke personally (as cross-defendants). The proposed cross-complaint alleged causes of action for: (1) breach of contract (the 2013 Fee Agreement); (2) declaratory relief (seeking declarations regarding (a) "the rights and responsibilities of the parties" under their attorney-client relationship (alleging breaches of fiduciary duties under the California Rules of Professional Conduct), (b) the reasonable value of the professional services rendered by the cross-defendants, including whether the cross-defendants owed Defendants a refund, and (c) the validity of Plaintiff's contractual lien); (3) breach of the implied covenant of good faith and fair dealing in the 2013 Fee Agreement; (4) breach of fiduciary duty (based on the former attorney-client relationship); (5) rescission or cancellation of the 2018 Fee Agreement;[4] and (6) an accounting of the fees and costs billed by Plaintiff and paid by Defendants.

At the end of July 2019, pursuant to American Arbitration Association Commercial Arbitration Rules forms, Plaintiff demanded that each of Defendants arbitrates the following disputes: "Breach of Contract (Attorney-Client Fee Agreement)" and "Cross-Complaint: Breach of Contract; Legal

---

[4] Defendants, neither of whom had a copy of the 2018 Fee Agreement, prepared their proposed cross-complaint before Plaintiff had provided them a copy of the agreement. Thus, the proposed cross-complainants pleaded the cause of action in the alternative: If the proposed cross-defendants are able to establish the existence of the 2018 Fee Agreement, then the claim is for rescission or cancellation; or, if the proposed cross-defendants are unable to establish its existence, then the claim is one for misrepresentation.

6

Malpractice." Approximately three weeks later, Defendants rejected Plaintiff's demands.

Plaintiff filed a petition to compel arbitration in the action in September 2019—which was approximately six weeks after Plaintiff first demanded arbitration and approximately nine months after Plaintiff filed the underlying action on the 2013 Fee Agreement. In the petition, Plaintiff identified the 2018 Fee Agreement and its arbitration provision[5] and alleged "a controversy" regarding Defendants' alleged nonpayment of Plaintiff's attorney fees and costs.[6] In support, Plaintiff also filed a notice of hearing, a memorandum of points and authorities, and a declaration with exhibits from Van Dyke.

---

[5] The arbitration provision, found at section 13.A. of the 2018 Fee Agreement, provides in relevant part: "Any dispute between the parties [Attorney and Client] regarding the construction, application or performance of any services under this Agreement, and any claim arising out of or relating to this Agreement or its breach, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud and disputes regarding attorney fees and/or costs charged under this Agreement . . . shall be submitted to binding arbitration upon the written request of one party after the service of that request on the other party. The parties shall appoint one person or agree upon a 3-person panel to hear and determine the dispute. . ." (Arbitration Provision). (Original brackets.)

[6] In the prayer of its petition, Plaintiff seeks to "arbitrate the controversy as herein alleged." Paragraph 4 of the petition identifies the "controversy" as "Defendants['] refus[al] to pay [Plaintiff]" what is owed under the 2013 Fee Agreement and 2018 Fee Agreement; and paragraph 5 identifies the complaint in this action as having "aris[en] from that controversy." Curiously, the petition does not mention the claims or disputes in the proposed cross-complaint.

7

Defendants filed written opposition to the petition, which consisted of a memorandum of points and authorities; declarations from Oliver, Abbott, and two of their attorneys; 11 exhibits; and a request for judicial notice. In part, Defendants argued that, because the 2018 Fee Agreement was not enforceable, the Arbitration Provision was not enforceable. More specifically, according to Defendants, the 2018 Fee Agreement "never took effect," because "the *conditions precedent* that were carefully specified by Mr. Van Dyke" in the agreement were never satisfied.[7]

Plaintiff replied with a memorandum of points and authorities and a second declaration from Van Dyke.

On November 8, 2019, the court entertained oral argument on both Plaintiff's petition to compel arbitration and Defendants' motion for leave to file amended answers and a cross-complaint. The court denied Plaintiff's petition on the basis that, because the Arbitration Provision is contained in a contract with a condition precedent that did not occur, "no operative contract was formed." The court stayed the action for 20 days to allow Plaintiff time to decide whether to appeal the denial of its petition; if Plaintiff did not

---

[7]    Defendants relied on the following two "CONDITIONS," which are found on page 1, paragraph 1, of the 2018 Fee Agreement:

- "This Agreement will not take effect, and [Plaintiff] will have no obligation to provide legal services, until . . . [Defendants] pay[ ] the initial deposit [of $2,500] . . . .  Upon satisfaction of th[is and other] conditions, this Agreement will be deemed to take effect as of the date of entry of judgment in the underlying trial court matters."; and
- "This Agreement shall not take effect . . . unless and until [Defendants] ha[ve] remitted all fees and costs outstanding in the underlying trial court matters (pursuant to the [2013 Fee Agreement])."

Defendants further relied on evidence to the effect that these conditions had not been satisfied.

appeal during that time period, then Defendants' motion would be deemed granted.

Plaintiff appealed from the order denying its petition to compel arbitration within the 20-day stay. Thus, Defendants' proposed amended answers and cross-complaint were not filed, and this appeal proceeded.

## II. DISCUSSION

On appeal, Plaintiff argues that the trial court erred in determining the enforceability of the 2018 Fee Agreement, because the Arbitration Provision delegates to the arbitrator, not to the court, the power to determine the scope of the arbitrable issues. As we explain, the trial court did not, in the first instance, interpret the 2018 Fee Agreement to determine whether the Arbitration Provision covered "the question of arbitrability—which involves the arbitrator's authority over the subject matter of the dispute" (*Patchett v. Bergamot Station, Ltd.* (2006) 143 Cal.App.4th 1390, 1397). Whereas the subject matter of the parties' general dispute may involve attorney fees, the subject matter of the initial dispute before the court—and, indeed, the only one addressed by Plaintiff in this appeal[8]—was whether the court or the arbitrator would decide the question of arbitrability.

There is no uniform standard for reviewing an order denying a motion to compel arbitration. (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317.) " ' " ' "If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citation.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of

[8]    Notably, Plaintiff does not challenge the trial court's interpretation of the agreement. Thus, we do not reach the issue of whether any conditions of the 2018 Fee Agreement were performed, satisfied, or excused. (See fn. 15, *post*.)

9

review is employed." ' " ' " (*Ibid.*) Where, as here, neither the language of the arbitration agreement nor the extrinsic evidence considered by the court is in dispute, the applicable standard of review is de novo. (*Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 543-544.)

We affirm if the trial court's order is correct on any legal basis, even if that basis was not invoked, because there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct. (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201.)

As in most appeals, because the trial court's order on appeal is "presumed to be correct," Plaintiff (as the appellant) has the burden of establishing reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

As we explain, we disagree with the trial court's analysis, which was based on the court's determination that, because certain conditions of the 2018 Fee Agreement were not "satisfied[,] . . . no operative contract was formed." As we further explain, Plaintiff nonetheless did not meet its burden of establishing reversible error. In part that is because, even though the trial court did not apply the proper standard, Plaintiff forfeited appellate consideration of the issue of whether the delegation clause clearly and unmistakably delegated to the arbitrator the determination of issues of arbitrability. In any event, even if we were to interpret the delegation clause, the trial court did not err in determining arbitrability, since the parties to the 2018 Fee Agreement did not clearly and unmistakably agree to delegate to the arbitrator issues of arbitrability.

A.    *Law*

As a preliminary issue—one which the parties do not mention—we must determine whether the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) or the California Arbitration Act (CAA; Code Civ. Proc., § 1280

10

et seq.) applies to the issues on appeal.  Although we have no difficulty concluding that the CAA, not the FAA, applies,[9] it makes no difference in this case, since "California law is consistent with federal law on the question of who decides disputes over arbitrability." (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553 (*Dream Theater*).)

"California law, like federal law, favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97; accord, *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 889 (*Aanderud*).)  As a result of this " 'strong public policy in favor of arbitration[,] . . . any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.' " (*Aanderud,* at p. 890; accord, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25.)  Public policy is not a consideration, however, until *after* a court has found the parties agreed to arbitrate their dispute.  (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 701.)  That is because " ' "[t]here is

---

9 " 'The FAA applies when the contract [containing the arbitration provision] "evidences a transaction involving interstate commerce." ' " (*Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.* (2019) 44 Cal.App.5th 834, 840.)  The party claiming FAA preemption has the burden to provide evidence that the transaction at issue involved interstate commerce.  (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 179; *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 211-214.)  Here, neither side presented evidence in the trial court or suggests on appeal that the 2018 Fee Agreement should be governed by the FAA.  In addition, there is nothing in the language of the agreement—which is limited to a California law firm's representation of California clients in a California court—to suggest that the 2018 Fee Agreement evidences a transaction involving interstate commerce. (See *Woolls* at p. 212 [the FAA does not apply to an agreement between a California homeowner and a California contractor to renovate a California residence].)

no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." ' " (*Ibid.*)

In *AT&T Technologies v. Communications Workers of America* (1986) 475 U.S. 643 (*AT&T Technologies*), a case under the FAA, our nation's high court reaffirmed certain basic principles of arbitration, the first two of which guide us in this appeal: " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit' " (*id.* at p. 648); and the threshold question of arbitrability is for judicial determination "[u]nless the parties *clearly and unmistakably* provide otherwise" (*id.* at p. 649, italics added). California law is consistent. According to our state supreme court, because " '[a]rbitration is strictly "a matter of consent" ' [citation], ' "a party cannot be required to submit to an arbitration any dispute which he has not agreed so to submit." ' " (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252.) Thus, "unless the parties specify otherwise, . . . they should not be required to submit to an arbitrator the questions whether they have agreed to submit to an arbitration at all or arbitrate a given dispute." (*Ibid.*)

Federal law "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." (*Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) ___ U.S. ___, ___ [139 S.Ct. 524, 527] (*Henry Schein*), citing *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68-70 (*Rent-A-Center*); see *Rent-A-Center*, at pp. 68-69 ["parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943-945 (*First Options*).) If the parties dispute the threshold or gateway question of

12

arbitrability—i.e., "whether their arbitration agreement applies to the particular dispute"—then "the question of who decides arbitrability is itself a question of contract." (*Henry Schein,* at p. ___ [139 S.Ct. at p. 527].) In this regard, as we just explained, the court determines the answer to that question "[u]nless the parties *clearly and unmistakably* provide otherwise" in their agreement. (*AT&T Technologies*, *supra*, 475 U.S. at p. 649, italics added; accord, *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83-84 (*Howsam*).)

Likewise, under state law, "arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract." (*McCarroll v. Los Angeles County District Council of Carpenters* (1957) 49 Cal.2d 45, 65, distinguished on other (federal) grounds as noted in *Charles J. Rounds Co. v. Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888, 893.) Where such an issue is presented, "it is necessary for the court to examine the contract to ascertain whether the parties 'have so provided.' " (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480.) In short, "the court cannot avoid the necessity of making a certain threshold determination of arbitrability, namely, whether the parties have in fact conferred this power on the arbiter." (*McCarroll*, at p. 66.) For purposes of this threshold determination, the court interprets the arbitration provision to determine whether it contains "*clear and unmistakable* evidence of the intent that the arbitrator will decide whether" the parties intended to delegate to the arbitrator issues of arbitrability. (*Dream Theater*, *supra*, 124 Cal.App.4th at p. 557, italics added; see *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1190-1192.)

Citing many of these same authorities, in *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376 (*Douglass*), the court recently summarized: "The

13

default presumption—and it is a 'strong' one—is that ' "the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability,' " e.g., whether there is an enforceable arbitration agreement or whether it applies to the dispute at hand.' [Citations.] However, the parties are free to designate the arbitrator as the one to decide whether a particular dispute is subject to arbitration [citations], although they must do so '*clearly and unmistakably*' if they wish to rebut the default presumption to the contrary[.]" (*Id.* at pp. 386-387, italics added, citing *Howsam, supra,* 537 U.S. at pp. 83-84; *First Options, supra,* 514 U.S. at p. 944.)

"The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." (*Aanderud, supra,* 13 Cal.App.5th at p. 892; see *Rent-A-Center, supra,* 561 U.S. at p. 69, fn. 1.) In part that is because the determination of who will decide issues of arbitrability "is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 782 (*Ajamian*), citing *First Options, supra,* 514 U.S. at pp. 943-945.) As a result, "a contract's silence or ambiguity about the arbitrator's power [to decide threshold issues of arbitrability] cannot satisfy the clear and unmistakable evidence standard." (*Ibid.*)

Where, as here, the issue is arbitrability, the court looks to the arbitration provision, not to the contract as a whole; and the only question is whether, under state law, the parties clearly and unmistakably agreed to arbitrate issues of arbitrability under the contract. (*Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 403-404.) By contrast, challenges to the enforceability of the underlying contract are not considered at this stage. (*Ibid.*)

14

An arbitration agreement is subject to the same rules of interpretation applicable to contracts generally. (*Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th 1, 9.) Thus, here, we will interpret the Arbitration Provision with the objective of enforcing the intentions of the parties under the applicable law dealing with delegation of arbitrability determinations. (*Ibid.*)

B.    *Analysis*

On appeal, Plaintiff argues that the trial court erred in failing to consider and interpret the delegation clause—a provision that Plaintiff contends clearly and unmistakably indicates the parties' intent to have the arbitrator, not the court, decide issues of arbitrability. On appeal, Defendants present the same principal argument that they presented to, and was accepted by, the trial court—namely, that because the evidence established that certain conditions in the 2018 Fee Agreement had not been performed (or satisfied or excused), the "agreement was never formed; therefore, the parties did not have an agreement to arbitrate." (Underscoring, bolding, and some capitalization omitted.) Defendants also present a number of additional arguments in support of their position, including forfeiture (based on Plaintiff's failure in the trial court to have raised the issue of the parties' clear and unmistakable intent in the delegation clause) and ambiguity in the language of the delegation clause.

We begin by explaining why the trial court (at Defendants' suggestion) approached the issue incorrectly.

The Civil Code defines a "contract" as "an agreement to do or not to do a certain thing." (Civ. Code, § 1549.) The essential elements of a contract are: "Parties capable of contracting"; "[t]heir consent"; "[a] lawful object"; and "[a] sufficient cause or consideration." (*Id.*, § 1550.) In the present case,

15

without first considering the elements of a contract (*id.*, § 1550) for purposes of determining whether a contract existed (*id.*, § 1549), the trial court applied evidence of nonperformance of specific conditions in the 2018 Fee Agreement and *on that basis* concluded that no contract existed. By reaching the issues of whether a condition was precedent and whether the condition had been satisfied, the court erred by deciding issues related to the merits of the parties' dispute, rather than limiting its initial determination to whether the parties had a contract in which they agreed to delegate to the arbitrator issues of arbitrability.[10] Whether a contract exists (the 2018 Fee Agreement) and whether a condition precedent was satisfied (Defendants to pay outstanding balance due), which would trigger an obligation to perform (Plaintiff to provide professional services), are two distinct concepts. For this reason, we reject the trial court's approach and analysis, which Defendants encourage us to follow in deciding this appeal. Only after the court makes the initial determination of whether the parties have a contract in which they agreed to delegate to the arbitrator issues of arbitrability will the parties know whether the court or the arbitrator will be tasked with deciding issues of performance or satisfaction of conditions—i.e., the merits of the dispute.

We now turn to the sole issue on appeal—namely, whether, in the 2018 Fee Agreement, the parties delegated to the arbitrator the determination of

_____

10    Indeed, at this stage—i.e., in determining whether a contract exists and, if so, whether the parties delegated arbitrability issues to the arbitrator—the court should not be determining whether a condition is precedent, concurrent, or subsequent, or whether the condition has been fully performed, partially performed, not performed, or excused. Those types of decisions, depending on the scope of the arbitration provision (not the delegation clause), will be decided in proceedings after the determination of whether the parties delegated to the arbitrator issues of arbitrability.

16

issues of arbitrability.[11]  Here, Plaintiff seeks to have a dispute resolved by arbitration.  Plaintiff relies on the Arbitration Provision, which is contained in the 2018 Fee Agreement—a document signed by Plaintiff and each of Defendants.  On appeal, Plaintiff contends, based on language within Arbitration Provision, that it and Defendants agreed to delegate to the arbitrator the responsibility of determining whether the underlying dispute comes within the scope of the Arbitration Provision.

Given this background and de novo review, the issue on appeal becomes whether Plaintiff met its burden of establishing that, based on the language in the Arbitration Provision of the 2018 Fee Agreement, Plaintiff and Defendants *clearly and unmistakably* agreed to delegate to the arbitrator issues of arbitrability.  (*Aanderud, supra*, 13 Cal.App.5th at pp. 891-892.)  In *Aanderud*, for example, the court concluded that the following language evidenced the parties' "clear and unmistakable" intent to delegate to the arbitrator questions of arbitrability:  "[T]he parties 'agree to arbitrate all disputes, claims and controversies arising out of or relating to . . . the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of [the arbitration provision].' " (*Id.* at p. 892; see *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 [court enforced delegation clause that provided " '[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement' "]; *Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 988 [court enforced delegation to the arbitrator of the authority to determine "the validity or application of

---

11    Notably, on appeal, Defendants do not argue that the 2018 Fee Agreement lacks any of the essential elements of a contract.

any of the provisions of" the arbitration provision].) In each case, the respective appellate court concluded that the parties clearly and unmistakably delegated to the arbitrator issues of arbitrability. (*Aanderud*, at p. 892; *Malone*, at p. 1560; *Momot*, at p. 988.)

As we explain, however, in this appeal Plaintiff forfeited appellate review of the "clear and unmistakable" analysis of the delegation clause. As we further explain, even if we were to reach the merits and apply the proper standard, the result would be no different: The court would determine issues of arbitrability, since the delegation language on which Plaintiff relies is, at best, ambiguous.

In the trial court, Plaintiff did not mention, let alone argue for an application of, the "clear and unmistakable" standard that must be applied when interpreting a delegation clause under the long-standing authorities cited *ante* (some of which Plaintiff does acknowledge in its appellate briefing).[12] Rather, Plaintiff argued only that a petitioner has the burden of proving by a preponderance of the evidence the existence of an enforceable *arbitration provision*; and any party opposing the petition has the burden of proving by a preponderance of the evidence any fact necessary to establish that *the arbitration provision* is unenforceable. Nowhere in any of the trial court submissions (by either side) is there the mention of a *delegation clause* or the standard to be applied in interpreting one. (See *Aanderud*, *supra*, 13

---

[12] These authorities include, but are not limited to: *Rent-A-Center*, *supra*, 561 U.S. at page 69, footnote 1; *Howsam*, *supra*, 537 U.S. at page 84; *First Options*, *supra*, 514 U.S. at pages 944-945; *AT&T Technologies*, *supra*, 475 U.S. at page 649; *Douglass*, *supra*, 20 Cal.App.5th at pages 386-387; *Aanderud*, *supra*, 13 Cal.App.5th at page 892; *Dream Theater*, *supra*, 124 Cal.App.4th at page 557.

Cal.App.5th at p. 892 ["The 'clear and unmistakable' test [applied to interpreting delegation clauses] . . . reverses the typical presumption in favor of the arbitration of disputes"].)  For this reason, Plaintiff forfeited appellate review of the interpretation of the delegation clause.  (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 [" 'A party is not permitted to change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' "].)  In *Rent-A-Center, supra*, 561 U.S. 63, for example, the Supreme Court ruled that, because the party who argued that an arbitration agreement was unenforceable "did not contest the validity of the *delegation provision in particular*" until the appeal to the Supreme Court, "[h]e brought this challenge to the delegation provision too late"; i.e., "he forfeited" it.  (*Id.* at pp. 74-76 & fn. 5, italics added.)

Even if we were to consider the untimely authorities and argument cited by Plaintiff for the first time on appeal, the result would be no different.  As we explain, if we were to analyze the language of the 2018 Fee Agreement in the context of the above-cited applicable law, then the court, not the arbitrator, would decide issues of arbitrability.

We would first focus on the Arbitration Provision, which is found at section 13.A. of the 2018 Fee Agreement and set forth in detail at footnote 5, *ante*.  According to Plaintiff, the "delegation clause" is contained in part of the first sentence and provides as follows:

> " 'Any dispute between the parties [Attorney and Client] regarding the construction, application or performance of any services under this Agreement . . .  shall be submitted to binding arbitration upon the written request of one party after the service of that request on the other party' " (Delegation Clause).  (Original brackets; bolding omitted.)

19

More specifically, Plaintiff suggests, based on the following emphases within the Delegation Clause, the parties intended to delegate to the arbitrator all issues of arbitrability:

> "The clause states unambiguously that '[a]*ny dispute* between the parties [Attorney and Client] regarding the *construction,* application or performance of any services under this Agreement . . . shall be submitted to binding arbitration upon the written request of one party after the service of that request on the other party.' " (Original brackets, italics, and ellipses.)

In its opening brief, without more, Plaintiff argues that "[t]he [D]elegation [C]lause here is clear and unmistakable." We disagree. By emphasizing three words in different parts of the same sentence—which together are meaningless ("any dispute . . . construction")—Plaintiff has not met its burden of clearly or unmistakably establishing the parties' intent to do anything. As we explained *ante*, "a contract's silence or ambiguity about the arbitrator's power [to decide threshold issues of arbitrability] cannot satisfy the clear and unmistakable evidence standard." (*Ajamian*, *supra*, 203 Cal.App.4th at p. 782; see *First Options*, *supra*, 514 U.S. at pp. 943-945).

Throughout the proceedings in both the trial court and again on appeal, Plaintiff has not differentiated between arbitration provisions and delegation clauses within arbitration provisions. For example, in its reply brief on appeal, Plaintiff tells us that language "[n]early identical" to that in the Delegation Clause here "has been considered 'the paradigm of a broad [*arbitration*] *clause.*' " (Citing and quoting *Fleet Tire Service of North Little Rock v. Oliver Rubber Co.* (8th Cir. 1997) 118 F.3d 619, 621 (*Fleet Tire*);

20

bracketed material added by Plaintiff, italics added.)[13]  In *Fleet Tire*, however, the court was neither presented with nor considered a *delegation clause*.  All that was at issue was the enforceability of an *arbitration provision*; and the court ruled not only (as Plaintiff tells us) that the arbitration provision at issue "is broad" enough to cover the underlying dispute, but also (which Plaintiff ignores) that the court, not the arbitrator, interpreted the arbitration provision (and made the decision to delegate the underlying dispute to the arbitrator).[14]  (*Id*. at p. 621.)

---

[13]  In *Fleet Tire*, the Eighth Circuit was presented with the following arbitration provision:  "Any controversy or claim arising out of or relating to this Agreement or any breach of its terms shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The expense of such arbitration shall be divided equally between the parties.  The arbitration provided for in this [provision] shall be the exclusive remedy for any dispute between [the parties], as a substitute for any and all legal remedies and proceedings that would otherwise be available to them."  (*Fleet Tire*, *supra*, 118 F.3d at p. 620.)

[14]  Likewise, neither of the other two cases cited (without discussion) by Plaintiff along with *Fleet Tire* involved the interpretation of a *delegation clause*.  In each, the court interpreted an *arbitration provision* and, after doing so, enforced the provision and ordered the underlying dispute to arbitration.  (*Prudential Lines, Inc. v. Exxon Corp*. (2d Cir. 1983) 704 F.2d 59, 63 ["The question of whether a dispute between the parties is covered by *the arbitration agreement* is for the courts to decide" (italics added)]; *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227, 231 ["The question at issue is whether *the arbitration agreement* is enforceable" (italics added)].)

For the foregoing reasons, in the present appeal, Plaintiff did not meet its burden of establishing that the trial court erred in determining arbitrability for purposes of ruling on Plaintiff's petition.[15]

## III.  DISPOSITION

The November 8, 2019 minute order denying Plaintiff's petition to compel arbitration is affirmed.  Defendants are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:



BENKE, Acting P. J.



AARON, J.

_____

[15]    As we explained in the text, *ante*, the trial court here failed to analyze whether the parties had clearly and unmistakably delegated to the arbitrator the power to decide issues of arbitrability.  Instead, the court reached the ultimate issue (and concluded that "no operative contract was formed" by the 2018 Fee Agreement).  In doing so, however, the court impliedly ruled that the parties agreed that it, not the arbitrator, would decide issues of arbitrability.  Since that is the only ruling challenged by Plaintiff in its appeal, that is the only ruling we review; we express no opinion on the court's rulings that certain conditions of the 2018 Fee Agreement were not "satisfied" or that "no operative contract was formed."